Affidavit on behalf of: Plaintiff
Affidavit of: Jane Gregory
Affidavit No: 1
Exhibit No: "JG1" "JG2"
Date Sworn: 30 July 2009

**IN THE UNITED STATES DISTRICT COURT**          **CASE NO: 1:09-CV-00655**

**DISTRICT OF COLUMBIA**

**B E T W E E N :**

### RYECROFT CONSULTANTS SA

**Plaintiff**

- and -

### KEVIN RICHARD HALLIGEN

and

### OAKLEY INTERNATIONAL GROUP LLC

and

### OAKLEY STRATEGIC SERVICES

**Defendants**

---

## AFFIDAVIT OF PROCESS SERVER

---

I, Jane Gregory of United Kingdom Process Server, 88-90 Hatton Garden, London, EC1N 8PN, Process Server acting under the direction of Surovell Markle Isaacs & Levy PLC, Attorneys for the Plaintiff, Swear on Oath as follows:

1. That except where otherwise stated to the contrary this Affidavit is made of my own knowledge to the matters referred to.

2. I am over the age of 18 and am not a party to nor do I have any interest in the outcome of this matter.

3. That I did on the 24th day of July 2009 at 18.00 hours serve the Defendant Kevin Richard Halligen with the Summons in a Civil Case and Complaint issued herein at The Royal Crescent Hotel, 16 Royal Crescent, Bath, BA1 2LS

4. There is now produced and shown to me marked "JG1" a bundle containing true copies of the documents so served by me.

5. That the Respondent was identified by his own admission after I identified him with a photograph in my possession.

6. There is now produced and shown to me marked "JG2" two photographs showing me serving the Defendant Kevin Richard Halligen with the Summons in a Civil Case and Complaint

Sworn by ⟨M Gregoy    JGREGORY

At    25 Hatton Garden, London, EC1N 8BQ

This   30th July 2009

Before me,

                A. Campbell

A Solicitor empowered to administer Oaths,

CAMPBELL CHAMBERS
SOLICITORS

25 Hatton Garden
London
EC1N 8BQ

Affidavit on behalf of: Plaintiff
Affidavit of: Jane Gregory
Affidavit No: 1
Exhibit No: "JG1" "JG2"
Date Sworn: 30 July 2009

**IN THE UNITED STATES DISTRICT COURT**          **CASE NO: 1:09-CV-00655**

**DISTRICT OF COLUMBIA**


**B E T W E E N :**


**RYECROFT CONSULTANTS SA**

**Plaintiff**

- and -

**KEVIN RICHARD HALLIGEN**

and

**OAKLEY INTERNATIONAL GROUP LLC**

and

**OAKLEY STRATEGIC SERVICES**

**Defendants**


**EXHIBIT "JG1"**


THIS BUNDLE MARKED "JG1" REFERRED IN THE AFFIDAVIT OF

JANE GREGORY DATED 30 JULY 2009 BEFORE ME


Signed...............*A. Campbell*
                    (SOLICITOR)

CAMPBELL CHAMBERS
SOLICITORS

25 Hatton Garden
London
ECiN 8RO

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

RYECROFT CONSULTANTS SA

**SUMMONS IN A CIVIL CASE**

V.

KEVIN RICHARD HALLIGEN
AND
OAKLEY INTERNATIONAL GROUP, LLC
AND
OAKLEY STRATEGIC SERVICES, LLC

CASE NUMBER: 1:09-655
RMC

TO: (Name and address of Defendant)

Serve: Kevin Richard Halligen
Serve: THE BEECHES, HENLEY PARK
COBBETT HILL, NORMANDY, GUILFORD,
SURREY, GU3 2BZ.  UNITED KINGDOM

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

SCOTT A. SUROVELL, ESQ.
G. DONALD MARKLE, ESQ.
SUROVELL MARKLE ISAACS & LEVY PLC
4010 UNIVERSITY DRIVE, 2ND FLOOR
FAIRFAX, VA 22030

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you fc the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of thi Court within a reasonable period of time after service.

NANCY MAYER-WHITTINGTON                          JUN  8 2009

CLERK                                            DATE

(By) DEPUTY CLERK

C.F.R. § 2430.10b-5, thereunder, and § 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78t(a).  Venue is proper in the United States District Court for the District of Columbia.  *28 U.S.C. § 1391.*  Defendants are subject to personal jurisdiction in the District of Columbia.

2.      Defendant Oakley International Group, LLC, at all times herein relevant, maintained its office and place of business in Washington, DC.  Defendant Kevin Richard Halligen maintained his place of residence in Washington, DC, and caused the formation of Oakley International Group, LLC, and Oakley Strategic Services, LLC, and was the President and managing member of both limited liability companies.  Defendants solicited and sold securities to the Plaintiff in the District of Columbia.  In connection with the sale of the securities and other transactions hereinafter alleged, Defendants used means or instrumentalities of interstate commerce, including telephonic and email communications, and transmission of documents by mail and email.  Defendants engaged in such transactions within the District of Columbia.  The situs of the injury is the District of Columbia.

## Statute of Limitations

3. . .   This action was filed within the applicable statute of limitations for each cause of action asserted.  *§ 12-301 of the District of Columbia Code.*

## The Parties

4.      Plaintiff Ryecroft Consultants SA is a company incorporated under the laws of the British Virgin Islands, with its office and principal place of business in Tortola, British Virgin Islands.  For jurisdictional purposes in this litigation, Ryecroft

2

Consultants SA (hereinafter sometimes referred to as "Ryecroft") is a citizen of a foreign state.

5.     Defendant Oakley International Group, LLC, is a Delaware limited liability company, and, at all times herein relevant, qualified to do business in, and doing business in, the District of Columbia, with its principal place of business at 2550 M Street, NW, Washington, DC 20037. Oakley International Group, LLC, is sometimes hereinafter referred to as "OIG".

6.     Defendant Oakley Strategic Services, LLC, is a Delaware limited liability company, having an office and place of business co-located with OIG. Oakley Strategic Services, LLC conducted business in the District of Columbia, but also maintained a place of business for certain of the time periods hereinafter referred to, in Virginia. Oakley Strategic Services, LLC, is sometimes hereinafter referred to as "OSS".

7.     On information and belief, Kevin Richard Halligen is a citizen of a foreign state, and at the time of the transactions hereinafter described, was the sole controlling person, and managing member, of OIG and OSS, and maintained his office and place of business at 2550 M Street, NW, Washington, DC 20037. Kevin Richard Halligen (hereinafter, sometimes referred to as "Defendant Halligen" or "Halligen", also maintained an address at 3234 N Street, NW, Washington, DC, and at 242 Emerson Street, NW, Washington, DC.

8.     OIG and OSS are citizens of the District of Columbia, or, alternatively, OIG is a citizen of the District of Columbia, and OSS is a citizen of the Commonwealth of Virginia. Plaintiff Ryecroft is a non-US citizen, and a citizen of a foreign state. Defendant Halligen, is a non-US citizen, and a citizen of a foreign state.

3

## Statement of Facts

9.     Ryecroft Consultants SA, is a private consulting and investment company owned and managed by Mark Aspinall, a citizen of Great Britain, and a resident of London, England. Mark Aspinall (hereinafter sometimes referred to as "Mr. Aspinall") is also an attorney principal in a law firm in London, specializing in the representation of clients involved in the exploration of natural resources, including both legal and political aspects associated with the acquisition and transportation of such commodities.

10.     In September 2006, in connection with Mr. Aspinall's representation of a client, the client engaged Red Defence International Ltd. (hereinafter sometimes referred to as "Red Defence"), a London-based company holding itself out as a crisis management company, to assist Mr. Aspinall in the task of obtaining the release of two executives from the client company who were imprisoned in West Africa. Defendant Halligen was the owner and principal person conducting the business and affairs of Red Defence.

11.     Over a period of approximately six (6) months, from September 2006 to February 2007, Mr. Aspinall was closely involved with Halligen on the client matter referred to in the preceding paragraph. Throughout this time period, Halligen purported to be ex-British Intelligence, and to have an extremely good network, particularly in the United States, and security clearance allowing him access to important persons who he claimed he had engaged to assist in the release of the two executives. During such time period, Mr. Aspinall and Halligen made regular trips to the United States at Halligen's direction, and for that stated purpose.

12.     During this time period, Defendant Halligen informed Mr. Aspinall that Halligen intended to refocus his business, and to begin business operations in the United

4

States. Defendant Halligen also indicated that he intended to marry a United States citizen, a lawyer who was working in the United States Department of Commerce. Defendant Halligen told Mr. Aspinall that he, Halligen, had already put a company structure in place, and he said that he had formed OSS to engage in U.S. Government work, and OIG to engage in commercial work.

13.    In March 2007, Defendant Halligen asked Mr. Aspinall to become an investor in OSS and OIG, which Halligen described as companies incorporated in Delaware in which he was the sole owner.  Defendant Halligen stated that the companies had been organized for him by a prominent law firm through its DC office, and that he and the companies maintained their business address at the law firm.  Communications between Defendant Halligen and Mr. Aspinall occurred by telephone and email, while Defendant Halligen was in the District of Columbia, and Mr. Aspinall in London.

14.    In April 2007, Mr. Aspinall came to Washington, DC for the marriage of Defendant Halligen and Maria Dybczak, and attended a marriage ceremony in the Georgetown area.  Mr. Aspinall met friends and associates of Halligen, some of whom had some prominence and verifiable backgrounds and history, lending credibility to Halligen and his business operations.

15.    Following continuing requests from Defendant Halligen, Mr. Aspinall agreed to consider becoming a consultant to Halligen, with Mr. Aspinall providing his services through Ryecroft Consultants SA to Defendant Halligen for Halligen's OIG, an arrangement which Halligen solicited in order to advance Defendant Halligen's interest in having Mr. Aspinall invest in OIG and OSS.  During the summer months of 2007, Defendant Halligen continued to solicit Mr. Aspinall to become a shareholder in

5

Halligen's companies, OSS and OIG, such solicitations occurring in person at meetings in Washington, DC and London, and by telephone and email communications.

16.    In September 2007, Mr. Aspinall, on behalf of Plaintiff Ryecroft Consultants SA, entered into a consultancy arrangement with Halligen's OIG, and agreed to acquire, at the request and in reliance upon the representations and statements of Defendant Halligen, a stock ownership interest in OIG and OSS in consideration of the payment by Ryecroft of $500,000 for such stock ownership interest.  In furtherance of such purchase and sale of securities, Halligen and Plaintiff Ryecroft entered into an Investment and Participation Agreement dated September 7, 2007 (hereinafter the "Investment and Participation Agreement"), which provided, among other things, that Plaintiff would acquire 25 percent of the capital shares of OIG, and 15 percent of the capital shares of OSS and, in consideration of the purchase and sale of such securities, Ryecroft would pay $500,000.

17.    On September 13, 2007, Ryecroft, at the direction of Defendant Halligen, wired $250,000 to the bank account of OIG maintained by OIG at PNC Bank for OIG's account in the District of Columbia.  On November 15, 2007, Ryecroft wired $250,000 to the bank account of OIG maintained by OIG at PNC Bank for OIG's account in the District of Columbia.

18.  .  Prior to entering into the Investment and Participation Agreement, and prior to Ryecroft's payment of $500,000 to OIG, Defendant Halligen, to induce Ryecroft to enter into the Investment and Participation Agreement and pay $500,000 for its stock ownership, represented to Ryecroft and Mr. Aspinall that he, Halligen, had invested $1 million of his own money in each of OIG and OSS.

19.    As ratification and documentation of the purchase and sale of securities, Defendant Halligen, individually, and Ryecroft and OIG entered into a shareholders' agreement (the "OIG Shareholders' Agreement") dated November 8, 2007, which, among other things, specifically stated that Defendant Halligen "has paid" $1,077,000 for his 75 percent share ownership in OIG, and Plaintiff Ryecroft has paid a contribution of $250,000 for Ryecroft's 25 percent share ownership in OIG.

20.    As ratification and documentation of the purchase and sale of securities, Defendant Halligen, individually, and Ryecroft and OSS entered into a shareholders' agreement (the "OSS Shareholders' Agreement") dated November 8, 2007, which, among other things, specifically stated that Defendant Halligen "has paid" $1,076,000 for his 85 percent share ownership in OSS, and Plaintiff Ryecroft has paid a contribution of $250,000 for Ryecroft's 15 percent share ownership in OSS.

21.    After the stock purchase completed in November 2007, Mr. Aspinall had numerous communications from and with Halligen in reference to the business and affairs of OSS and OIG, and Mr. Aspinall also inquired into the delivery of the share certificates representing Ryecroft's stock ownership interest in OSS and OIG.

22.    In April 2008, having become concerned with the absence of having received the stock ownership certificates and other information from Halligen, Mr. Aspinall came to Washington, DC and met with Halligen and an attorney from the DC law firm who was representing Halligen and OSS and OIG. Mr. Aspinall wanted to meet with the lawyer who was handling the corporate affairs for the companies. At that meeting, among other things, Mr. Aspinall was informed by the lawyer that the companies were Delaware limited liability entities, and that the shareholder agreements

7

would have to be converted into operating agreements, as the appropriate structure for limited liability companies. Mr. Aspinall accepted that information, and the continuing assurances from Defendant Halligen, that the affairs and businesses of OSS and OIG were proceeding appropriately, and Halligen reaffirmed his commitment to those businesses.

23.     At the April 2008 meeting, Halligen also requested that Mr. Aspinall provide a short term bridge loan to OIG, claiming that substantial monies due to OIG were tied up in a significant client project, adversely impacting the cash flow of OIG. In reliance upon Defendant Halligen's statements, and continuing to place trust in Halligen, Mr. Aspinall caused Ryecroft to lend to OIG an additional $250,000, and that loan amount was wire transferred to OIG's account April 17, 2008.

24.     In May 2008, Halligen employed Andrew Hollis ("Mr. Hollis") to become Chief Executive Officer of OIG, and Mr. Hollis began working for OIG. Mr. Aspinall believes, and Ryecroft alleges that Halligen employed Mr. Hollis to lend credibility to OIG, and because Mr. Aspinall was pressing for financial information on OSS and OIG. Over a period of several months following Mr. Hollis' employment, Hollis became concerned with the business and affairs of OIG, but Mr. Hollis continued his reliance on Defendant Halligen's repeated statements as to his commitment to the business of OIG. In reliance upon assurances from Halligen, Mr. Hollis agreed to purchase a 10 percent equity ownership interest as a member of OIG, and on August 15, 2008, Mr. Hollis contributed $80,000 to OIG for the purchase of his 10 percent membership interest in that company.

25.     In September 2008, Mr. Aspinall came to Washington, DC, and again met with Defendant Halligen, requesting a complete update and detailed information on the business and affairs of OSS and OIG, including detailed financial information for income, expenses and other financial transactions.     Mr. Aspinall also requested repayment of the $250,000 loan made by Ryecroft to OIG in April 2008.   Defendant Halligen did not provide the information requested by Mr. Aspinall, but Halligen did indicate that he would repay the $250,000 loan, together with outstanding consultancy fees.

26.     In October 2008, Halligen left Washington, DC, purportedly for a week's vacation to Italy with his girlfriend, and although repeated calls and emails were directed to Defendant Halligen in the weeks following his departure, Halligen has not returned, and has, in fact, abandoned the business of OSS and OIG.  OSS had ceased its operations, and in November 2008, OIG ceased its operations.  In December 2008, Andre Hollis resigned from OIG, after being unable to get Defendant Halligen to return to Washington, DC for the business and affairs of OIG, or to account for financial transactions of the companies made by Halligen.

27.     In December 2008, Mr. Aspinall caused Plaintiff Ryecroft to provide an additional $115,000 for the benefit of OIG in order to settle two demands made against OIG relating to sensitive work which had been undertaken by OIG, and for which OIG failed to pay bona fide creditor claims.  Ryecroft also advanced $6,000 to assist an employee of OIG who employment had terminated without payment of amounts due to such employee.

28.     Commencing in December 2008, and for several months thereafter, Mr. Aspinall, for the benefit of Ryecroft, and Mr. Hollis undertook to obtain an accounting of the financial affairs and transactions of OSS and OIG.

29.     Although demand has been made on Defendants for return of amounts invested by Plaintiff, and for monies lent by Plaintiff to Defendants, and for an accounting, Defendants have failed and refused to provide any such accounting, or to return or repay any of such funds.

30.     Through the date of commencement of this lawsuit, Plaintiff had paid to, or advanced for the benefit of OSS or OIG, the following sums:

(a)     $500,000 for stock purchase of security interests in OSS and OIG;

(b)     $250,000 as a short term loan to OIG made in April 2007; and

(c)     $121,000 for monies lent in December 2008 for payment of certain bona fide obligations of OIG.

31.     On information and belief, and based on the examination of the bank accounts of OIG:

(a)     Defendant Halligen did not personally invest $1 million in OIG, and, in fact, had only contributed $60,000 at the time he represented to Ryecroft and Mr. Aspinall that his investment was $1,077,000;

(b)     during the period of Defendant Halligen's management and control of OIG, and through November 2008, Halligen had withdrawn, for his personal use and benefit, and not for the benefit of OIG, over $780,000, and had also caused the disbursement and payment of approximately $200,000 to Maria Dybczak; and

(c)     Defendant Halligen also used bank card purchases and ATM withdrawals from the bank account of OIG for his personal use and benefit, in amounts in excess of $100,000.

32.     Plaintiff has not obtained access to the books and records of OSS.

### COUNT I

### Securities Fraud

33.     Plaintiff restates paragraphs 1 through 32 of this Complaint, and incorporates such paragraphs herein by this reference.

34.     Defendants, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, in connection with the purchase or sale of the securities, as described in this Complaint, knowingly, willfully, or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which have operated as a fraud upon the Plaintiff, the purchaser of such securities.

35.     Defendant Halligen falsely represented that he had paid $1,077,000 to OIG, and $1,076,000 to OSS, for the purchase of his 100 percent ownership interest in OSS and OIG, when, in fact, at the date of Plaintiff's purchase of securities, Halligen had invested only $60,000 in OIG.   Based on information and belief, and including an interview of persons familiar with the business and affairs of OSS, Halligen did not invest $1,076,000 of his personal funds in OSS.

11

36.    At the time Halligen induced Ryecroft to purchase securities of OSS and OIG for $500,000, Halligen knew that the representations that he made to Mr. Aspinall, and upon which Ryecroft relied, were false.

37.    Plaintiff reasonably relied upon the representations of Halligen, and did not discover that the statements made to induce Plaintiff to purchase securities were false until after November 2008, when the bank account statements of OIG became available to Plaintiff.

38.    Defendant Halligen also omitted to tell Mr. Aspinall, during Mr. Aspinall's inquiries on behalf of Ryecroft, and prior to Ryecroft's investment in the securities of OSS and OIG, that he, Defendant Halligen, was using the bank account and funds of OSS and OIG for his own personal purposes.

39.    Defendant Halligen, for himself, and as the managing member, and on behalf of OSS and OIG, knew that the representations were false, and acted with the intent to deceive and defraud plaintiff.

40.    By reason of the foregoing, Defendants Halligen, OSS and OIG, directly or indirectly, violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder.

## COUNT II

### Control Person Liability

41.    Plaintiff restates paragraphs 1 through 40 of this Complaint, and incorporates such paragraphs herein by this reference.

42.    At all material times in respect to the purchase and sale of the securities of OSS and OIG to Plaintiff, Defendant Halligen was the sole owner and managing member

of OSS and OIG, and was the sole person who acted in all respects for and on behalf of OSS and OIG for the sale of the securities.

43.     Defendant Halligen was an individual party to the Investment and Participation Agreement date September 7, 2007, and was an individual party to the OSS Shareholders' Agreement and the OIG Shareholders' Agreement, and personally completed and initialed the amount which he stated as his paid consideration for his stock purchase.

44.     By reason of the foregoing, Defendant Halligen is personally and directly liable to Plaintiff, and is jointly and severally liable with defendants OSS and OIG for the violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder.

## COUNT III

### Common Law Fraud

45.     Plaintiff restates paragraphs 1 through 44 of this Complaint, and incorporates such paragraphs herein by this reference.

46.     The representations and omissions of Defendant Halligen directly, and for the benefit of OSS and OIG, constitute common law fraud, both actual and constructive. Defendants made numerous false representations of material facts, knowingly and intentionally, and with the intent to mislead. Plaintiff relied upon such representations and did not know of the untruth of such representations, and, as a direct and proximate result, Plaintiff turned over to Defendants Halligen and OIG $871,000.  Although demand has been made, Plaintiff has not received repayment of any of such sums.

13

Defendant OIG did pay to Ryecroft $100,000 in October 2008, which amount was designated as payment for consulting services.

### COUNT IV

### Conversion

47.     Plaintiff restates paragraphs 1 through 46 of this Complaint, and incorporates such paragraphs herein by this reference.

48.     The Defendants unlawfully misappropriated the amounts paid by Plaintiff for Plaintiff's purchase of its security interest in OSS and OIG, by allowing such funds to be used, and using such funds, for the personal purposes of Defendant Halligen.

49.     Defendant Halligen also obtained, for the benefit of OIG, $250,000 as a loan from Plaintiff to OIG, on the express representation that such loan amount was for the benefit of OIG, and for its legitimate business purposes, when at the same time, and during the months of April, May, June and July 2008, Defendant Halligen was disbursing funds from the bank account of OIG for payment of Defendant Halligen's personal expenses, or for payment of personal accounts or charges of Halligen.

50.     The actions of the Defendants constitute conversion.

51.     The Defendants knowingly and willfully converted Plaintiff's property, and acted under circumstances amount to a willful and wanton disregard of the rights and interest of Plaintiff Ryecroft.

52.     As a direct result of Defendants' conversion, Ryecroft has suffered the loss of $750,000, and has incurred, and will incur, attorneys' fees and other expenses as a result of the conduct and action of Defendants.

14

53.    The conduct of Defendants also caused Plaintiff Ryecroft to advance the additional sum of $121,000 in December 2008, because of the defalcation and conversion by Defendants, leaving OIG unable to honor its obligations.

## COUNT V

### Breach Of Contract

54.    Plaintiff restates paragraphs 1 through 53 of this Complaint, and incorporates such paragraphs herein by this reference.

55.    Ryecroft lent to OIG, at the request and direction of Defendant Halligen, individually and in his capacity as the controlling person of OIG, $250,000, said amount to be repaid, together with interest.

56.    Such loan amount is due and payable in full, has not been paid by OIG to Ryecroft, and is now due and payable in full, together with interest, attorneys' fees and costs.

57.    In December 2008, Ryecroft advanced for the benefit of OIG, $121,000, as more particularly alleged in paragraph 27. Such amount was advanced for the benefit of OIG, with the knowledge and concurrence of Andre Hollis, who, at the time of such advance, was acting for the benefit of OIG in attempting to obtain funds for OIG's benefit for the payment of its legitimate obligations. Ryecroft is entitled to recover such amount from OIG.

## COUNT VI

### Breach Of Fiduciary Duty

### Accounting and Constructive Trust

58.     Plaintiff restates paragraphs 1 through 57 of this Complaint, and incorporates such paragraphs herein by this reference.

59.     As a shareholder of OSS, and a shareholder of OIG, and in accordance with the Investment and Participation Agreement, and the OSS Shareholders' Agreement, and the OIG Shareholders' Agreement, Plaintiff Ryecroft is entitled by agreement, and by Delaware law, to corporate and accounting information. OIG and OSS were organized as limited liability companies under the laws of the State of Delaware, and Ryecroft acquired a membership interest in such entities, and is entitled to the benefits under applicable law in respect to Delaware limited liability companies.

60.     OSS, OIG and Defendant Halligen owe Ryecroft fiduciary duties of utmost good faith, full disclosure, and fair dealing.  OSS and OIG, together with Defendant Halligen, owe Ryecroft a fiduciary duty to act with due regard for the rights and interests of Ryecroft. Defendants have breached their fiduciary duties.

61.     In addition to money damages for breach of fiduciary duty, Ryecroft requests a full accounting by the Defendants for all receipts and disbursements of funds of OIG and OSS, and the identity of all persons and entities who paid funds to or received funds from either OSS or OIG, and the purpose of such payment or receipt.

62.     Plaintiff Ryecroft demands an accounting of Defendant Halligen for all funds disbursed, directly or indirectly, from the bank accounts of OSS or OIG for personal expenses or obligations of Defendant Halligen or of Maria Dybczak.

16

63.   Plaintiff Ryecroft demands the imposition of a constructive and/or resulting trust over all monies or property of Defendant Halligen arising out of the use or misappropriation of any of the property or assets of OIG or OSS.

WHEREFORE, Plaintiff Ryecroft Consultants SA requests the Court to enter judgment against Defendants Kevin Richard Halligen, Oakley International Group, LLC and Oakley Strategic Services, LLC, joint and severally, as follows:

A.   compensatory damages in the amount of $500,000 for Plaintiff's purchase of the securities of OSS and OIG, together with interest and attorneys' fees;

B.   $250,000 for monies lent by Plaintiff to OIG in April 2008, together with interest and attorneys' fees;

C.   $121,000 advanced by Plaintiff to OIG in December 2008, together with interest and attorneys' fees;

D.   punitive damages in the amount of $500,000 against Defendant Kevin Richard Halligen, or the maximum amount allowed by law;

E.   for an accounting and imposition of a constructive trust on the property and assets of Defendants Halligen, OSS and OIG;

F.   pre-judgment and post-judgment interest at the maximum rate allowed by law;

G.   costs and attorneys' fees in such amount as the Court shall determine; and

17

H.     such further and other relief as the Court shall deem just and proper.

RYECROFT CONSULTANTS, SA
BY COUNSEL

G. Donald Markle, DC Bar No. 8581
Scott A. Surovell, DC Bar No. 461826
Jonathan C. Dailey, DC Bar No. 448141
SUROVELL MARKLE ISAACS & LEVY PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
703-277-9718 (Phone)
703-591-2149 (Fax)
Counsel for Plaintiff Ryecroft Consultants SA

Affidavit on behalf of: Plaintiff
Affidavit of: Jane Gregory
Affidavit No: 1
Exhibit No: "JG1" "JG2"
Date Sworn: 30 July 2009

IN THE UNITED STATES DISTRICT COURT      CASE NO: 1:09-CV-00655

DISTRICT OF COLUMBIA

B E T W E E N :

RYECROFT CONSULTANTS SA

Plaintiff

- and -

KEVIN RICHARD HALLIGEN

and

OAKLEY INTERNATIONAL GROUP LLC

and

OAKLEY STRATEGIC SERVICES

Defendants

---

EXHIBIT "JG2"

---

THIS BUNDLE MARKED "JG2" REFERRED IN THE IN THE AFFIDAVIT OF
JANE GREGORY DATED 30 JULY 2009 BEFORE ME

Signed..................

(Soucitor)

CAMPBELL CHAMBERS
SOLICITORS

25 Hatton Garden
London
EC1N 8BO



Affidavit on behalf of: Petitioner
Affidavit of: Jane Gregory
Affidavit No: 1
Exhibit No: "JG1" "JG2"
Date Sworn: 30 July 2009

IN THE UNITED STATES DISTRICT
COURT

DISTRICT OF COLUMBIA

CASE NO: 1:09-CV-00655

B E T W E E N :

RYECROFT CONSULTANTS SA
Plaintiff

- and -

KEVIN RICHARD HALLIGEN
and
OAKLEY INTERNATIONAL GROUP
LLC
and
OAKLEY STRATEGIC SERVICES
Defendants

---

**AFFIDAVIT OF PROCESS SERVER**

---